# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| EDDIE J. ARRINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CAUSE NO. 1:16-CV-148 |
| | ) | |
| CITY OF FORT WAYNE, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on: (1) Defendant Lunz Excavating, Inc.'s Motion for Summary Judgment (DE #50); (2) Defendant's Motion for Summary Judgment, filed by Kelley Towing (DE #52); and (3) Defendants, City of Fort Wayne and John Caywood's Motion for Summary Judgment (DE #56), all filed on February 23, 2017. For the reasons set forth below, the motions are **GRANTED.** Arrington's federal claims are **DISMISSED WITH PREJUDICE** and this case is **REMANDED** to Allen Superior Court for further proceedings.

BACKGROUND

On March 10, 2016, Eddie J. Arrington ("Arrington") filed a complaint against the City of Fort Wayne ("City"), Mayor Henry, John Caywood ("Caywood"), Kelley Towing ("Kelley"), and Lunz Excavation ("Lunz") in the Allen Superior Court. The complaint alleges that the Defendants discriminated against him based on his

"race and aesthetic belief," by depriving him of property in violation of the Fourteenth Amendment and I.C. § 35-46-4-1. More specifically, he alleges that, on March 10, 2014, a neighborhood code officer, together with the Fort Wayne Police Department, entered his property and unlawfully removed his car, truck, trailer, riding lawn mower, grill and other items. Because the complaint asserts federal claims, it was removed to this Court.

Defendants have each filed a motion for summary judgment asserting that judgment must be entered in their favor as a matter of law. Each Defendant also served Arrington with a "Notice of Summary Judgment Motion" that explained what a summary judgment motion is and his obligations in response to the motion. (DE ##54, 55, 59). The notice explained that factual allegations must be supported with citations, and that the court is not required to consider materials that are not cited. Despite these notices, Arrington filed a single response to the instant motions that is roughly two pages in length and devoid of any citations. (DE #66). He also filed a handful of exhibits, including a disk with two video segments. (DE #67). Defendants filed a joint reply brief on July 21, 2017, and the motion is now ripe for adjudication.


DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

A party opposing a properly supported summary judgment motion may not rely on allegations or denials in her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). If the nonmoving party fails to establish the existence of an essential element on which he or she bears the burden of proof at trial, summary judgment is proper. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts

Each Defendant has provided a statement of undisputed material facts with citations to supporting evidence in compliance with the requirements of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1. Accordingly, to avoid summary judgment, Arrington must demonstrate that there is a genuine dispute by citing material facts he contends are in dispute in a statement of genuine disputes or showing that the materials cited by the Defendants do not establish the absence of a genuine dispute. Fed. R.Civ. P. 56(c).

Although there are three separate motions for summary judgment before the Court, the controlling facts are undisputed and identical as to each motion. For that reason, the Court has borrowed liberally from the response brief of the City, Mayor Henry, and Caywood. (DE #57). Arrington's response brief does not contain a statement of genuine disputes, but does cite to several exhibits in the body of his response. Although not strictly in compliance with this Court's rules, in light of his *pro se* status, the exhibits cited by Arrington have been considered by the Court. These exhibits, however, do not directly contradict any of the Defendants' assertions. Accordingly, where Defendants have appropriately cited to the record, the facts they present are deemed admitted.

The City has enacted ordinances which regulate housing and

building standards for properties located within the City, including an ordinance entitled "Minimum Housing and Maintenance Standards, codified as Chapter 152 of the Fort Wayne City Code of Ordinances." (Caywood Aff. ¶ 4). The City has also enacted an ordinance regulating the manner of parking of motor vehicles within the City limits. (*Id.* ¶ 5).

Section 152.04.C(6) and (7) govern exterior property areas and provide:

> (C) *Exterior Property Areas*.
> ****
> (6) *Vehicles*. Except as provided for in other regulations, no inoperable motor vehicle shall be parked, kept or stored on any premises, and no vehicle shall at any time be in a state of major disassembly, disrepair, or in the process of being stripped or dismantled. All operable vehicles shall be parked on an approved surface.
> (7) *Prohibited outdoor storage*. It shall be unlawful and prohibited for an occupant to cause, keep, permit or maintain a public nuisance. Public nuisance shall include, but not be limited to, the following:
> (a) Building materials stored on any premises, except the following: building materials and equipment placed or stored on premises, or for a period of no longer than 30 days prior to a commencement of building, and no longer than ten days after the completion of building on said premises.
> (b) Any furniture, appliances or household items not originally designed or manufactured solely for outdoor use, including tools, auto parts, and other similar items.
> (c) Any equipment, furniture, bicycles, or children's toys which were originally designed or manufactured for outdoor use and which are now dilapidated, deteriorated or dismantled.

(Caywood Aff. Ex. 1 at 9).

Section 152.04.E, governs trash and debris. It provides:

> (E) *Trash and Debris.* All exterior property and premises, and the interior of every structure, shall be free from any accumulation of trash and debris.
> (1) *Disposal of Trash and Debris*. Every occupant of a structure shall dispose of all refuse in a clean and sanitary manner by placing in refuse containers.
> (2) *Approved Refuse Containers*. The owner of every occupied premise shall be responsible to supply covered refuse containers for trash sufficient to meet the needs of the occupants.

(Caywood Aff. Ex. 1 at 11).

The City's Neighborhood Code Enforcement Department ("NCE") is responsible for enforcement of both the Indiana Unsafe Building Law (I.C. § 36-7-9 *et seq.*) and the relevant sections of the City Building Code. (Caywood Aff. ¶ 6). On March 10, 2014, the date of the NCE's entry onto Arrington's properties to abate violations of the City Code, Cindy Joyner was the Deputy Director of NCE. (Joyner Aff. ¶¶ 2-3). Caywood held the position of Administrator. (*Id.* ¶ 3; Caywood Aff. ¶ 3). His duties included the supervision of one field supervisor and eleven (11) Code enforcement officers. (Caywood Aff. ¶ 3). He was not a policy maker for NCE or the City. (*Id.*). NCE has policies and procedures for its enforcement of the City Code. (*Id.* ¶ 7; City Code Section 152.12, Enforcement of Penalties; I.C. § 36-7-9-17).

When NCE learns that a property may be in violation of Section 152 or 72, or the Unsafe Building Law, a Code enforcement officer

-6-

goes to the property, inspects the property, and takes photographs of the items that violate the City Code. (Caywood Aff. ¶ 8). The NCE then cites the property owner. (*Id.*). The property owner has a right to an administrative hearing. (*Id.*). If the violations concern health and safety, NCE will give the property owner ten days to abate the violation. (*Id.*). If the violations are not abated, the NCE issues a written Order to Abate ("OTA"), giving the property owner an additional ten days to abate the violations. (*Id.* ¶ 9). The order becomes final unless a hearing is requested in writing by the property owner. (*Id.* ¶ 9; *see also* Section 152.12.)

If no hearing is requested, at the end of the ten days, the enforcement officer returns to the property to again inspect to see if the property owner has abated the violation, in which case, no further enforcement action is taken. (Caywood Aff. ¶ 10). If, however, the cited violations have not been abated, the City's NCE may file suit in Allen Circuit or Superior Court for injunctive relief and an order permitting NCE to enter the property and itself abate the violations. (*Id.* ¶ 10). In most cases, judicial action is unnecessary and the property owner complies at some point during the administrative process. (*Id.*).

The City ordinances are enforceable against all privately owned properties in the City. (Caywood Aff. ¶ 11). They are enforced in all neighborhoods of the City and are enforced without

regard to the race of the property owner. (*Id.* ¶ 11; Joyner Aff., ¶ 7). Indeed, the county records of property ownership do not identify the race of the owner and none of the NCE records identify the race of the owner to whom enforcement OTAs are sent. (Caywood Aff. ¶ 11). Therefore, often times, when NCE begins enforcement actions against a property owner, the NCE officer does not know the race of the property owner. (Joyner Aff. ¶ 7). Rather, NCE merely knows that the property is in violation of the City Code. (*Id.* ¶ 7).

The NCE begins enforcement actions against a property owner when the violation comes to the attention of a Code enforcement officer. (Caywood Aff. ¶ 12). Offending properties come to the NCE's attention in a variety of different ways, such as oral or written complaints about the property received from neighborhood associations, neighbors, citizens, other city employees of other departments, or from the personal observation of the enforcement officers when they are in the field inspecting other properties. (*Id.*). The race of the property owner is not a factor in Caywood's decisions to take enforcement action and was not considered in deciding to take action against Arrington. (Caywood Aff. ¶ 13; Joyner Aff. ¶ 8).

Because NCE's resources are finite, NCE must prioritize enforcement efforts based on the seriousness of the violations, the number of violations, and their visibility. Moreover, not all

violations come to the attention of NCE and, even after abatement has occurred due to NCE's enforcement actions, future violations may occur that may or may not come to NCE's attention. (Caywood Aff. ¶ 14; Joyner Aff. ¶ 9). However, when the new violations come to NCE's attention, additional enforcement actions are usually taken. (*Id.*).

Until recently, Arrington owned and lived at 3422 S. Lafayette Street. (Arrington Dep. p. 11). He also owned an adjacent lot at 3502 S. Lafayette Street (collectively "properties"). (Arrington Dep. at 10). The properties front Lafayette Street, which is a major corridor for traffic traveling north into the City's downtown area and to the City's north side. (Par. 5 of Findings of Fact and Conclusions of Law and Order of Permanent Injunction issued by The Honorable Nancy Eshcoff Boyer, Judge Allen Superior Court, December 17, 2013, hereinafter "Order", Ex. 1 to City Defendants' Answer to Plaintiff's Complaint).

Arrington salvages and collects scrap metals and other discarded items and then either sells, trades, or gives the items away at yard sales. (Arrington Dep. at 71-72). Arrington had as many yard sales as weather would permit. (*Id.*). Since August of 2009, NCE has received numerous complaints about Arrington's property located at 3422 Lafayette. (Caywood Aff. ¶ 15). The complaints have been about the condition of the outside yards of the property, including complaints that it looks like a "junkyard"

and is constantly full of trash, junk, and dilapidated items as well as broken down, partially dismantled and inoperable vehicles. (*Id.*). There were also complaints that the owner had frequent yard sales. (*Id.*; Order ¶ 9).

Following receipt of these complaints in 2009, NCE began an investigation of the property that led to the filing by the City of a complaint for injunctive relief in the Allen Circuit Court, Cause No. 02C01-1101-PL-00005. (Order ¶ 16). After the Circuit Court conducted an evidentiary hearing that Arrington failed to attend, the Circuit Court entered an order for mandatory injunction. (*Id.* ¶¶ 17-18). On April 8, 2011, NCE removed items from the properties that violated the City Code. (*Id.* ¶ 19; Caywood Aff. ¶ 16).

However, Arrington continued to accumulate and store items of personal property in violation of the City Code at both of his properties for his yard sales, and the City continued to receive numerous complaints about the storage of items and parked vehicles at the properties. (Caywood Aff. ¶ 17). From January 15, 2011, through March 5, 2013, the City received eight complaints about trash and debris, abandoned vehicles, and deteriorated items on the property. (Order ¶¶ 20-21). In addition, NCE Director Joyner and NCE Administrator Caywood each received numerous other complaints in person, by telephone, and by email about the properties. (Order ¶ 22).

After obtaining inspection warrants pursuant to I.C. §

36-7-9-16 from the Allen Superior Court, NCE's Caywood inspected the properties on May 10, 2013, and found numerous items being stored outside that were not designed or manufactured solely for outdoor use and found multiple other items that were in dilapidated, deteriorated or dismantled condition. (Order ¶ 24). While at the properties, Caywood directed photos be taken of numerous items violative of the City Code and also had a list prepared of the personal property being stored in violation of City Code. (Arrington Dep. Ex. A).

On June 12, 2013, NCE issued a notice of violation by certified mail, but Arrington failed to sign for the notice. (Caywood Aff. ¶ 19). On July 24, 2013, NCE served Arrington with two Orders to Abate, each with photos and lists of the personal property found to be violative of the Code. (*Id.*). Pursuant to I.C. § 36-7-9-5(b)(6), the orders informed Arrington that he had the right to contest the OTAs by requesting a hearing. (*Id.*). The OTAs gave Arrington ten days to abate and advised him that the properties would be reinspected after ten days, on August 3, 2013, and if violations remained, legal proceedings would be initiated to compel Arrington's compliance with City Code. (*Id.*; Arrington Dep. Ex. A).

On August 9, 2013, Caywood reinspected the properties and found that Arrington had not complied with the Orders to Abate. (Caywood Aff. ¶ 20). Therefore, on September 13, 2013, the City

filed a complaint for injunctive relief and to recover civil penalties against Arrington in the Allen Superior Court. (*Id.;* Arrington Dep. Ex. A). A hearing was held on October 18, 2013, and testimony was taken from NCE witnesses Joyner and Caywood and from Arrington. (Caywood Aff. ¶ 21). At the hearing, Arrington admitted that he had received the two OTAs but that he had ignored them since he saw nothing wrong with the items that were stored on his properties. (Order ¶ 33). According to Arrington, even dilapidated, deteriorated or dismantled items are items he can use. (*Id.* ¶ 37).

On December 17, 2013, Judge Boyer issued an order of permanent injunction. (City's Answer Ex. A; Arrington Dep. Ex. B). In her order, Judge Boyer concluded that the City had acted within its lawful authority and its police power when it had enacted its safe housing ordinance and its abandoned vehicle ordinance and that these ordinances were legally enforceable as applied to Arrington. (Order ¶¶ 14, 15). The court also held that the City had met its burden of establishing that Arrington had repeatedly violated and continued to violate Sections 152.04(C)(6) and (7), and Section 72.23 of the City Code, and that Arrington had received repeated notices of these violations but had failed to take action to correct the violations. (Order ¶¶ 23, 25 and 26). The Court then issued a permanent mandatory and prohibitory injunction as follows:

> 27. Pursuant to I.C. 36-7-9-18, the Court hereby grants a mandatory injunction against

Arrington, and ORDERS Arrington to take
<u>immediate</u> action to bring the Properties into
compliance with the Ordinance. Specifically,
the Court hereby ORDERS as follows:

a. Arrington is ORDERED to remove from
the outside of the Properties, including
porches and yards, all furniture, appliances,
or other household items that are not designed
or manufactured solely for outdoor use.

b. Arrington is ORDERED to remove from
outside of the Properties, all equipment,
furniture, bicycles, or children's toys that
were designed or manufactured solely for
outdoor use but which have become dilapidated,
deteriorated, or dismantled.

c. Arrington is ORDERED to remove from
the outside of the Properties all vehicles
that are inoperable. Any operable vehicle must
be parked on a driveway, carport, street, or
alleyway in compliance with state and local
laws.

(Order ¶ 27)(emphasis in original). The court gave Arrington

thirty days to comply and directed the City to schedule another

hearing to determine if Arrington had complied with the mandatory

injunction. (*Id*. ¶¶ 28 and 29).

In addition to the mandatory injunction, the court entered a

permanent prohibitory injunction against Arrington:

The Court hereby enjoins Arrington from
violating Fort Wayne Municipal Code
§152.07(C)(7); Fort Wayne Municipal Code
§152.06; and Fort Wayne Municipal Code §72.22.
Specifically, the Court ORDERS and enjoins as
follows:

a. Arrington will not store on the
outside of the Properties, including all
porches and yards, any furniture, appliances,
or other household items that are not designed
or manufactured solely for outdoor use.

b. Arrington will not store on the
outside of the Properties, including all
porches and yards, any equipment, furniture,

-13-

> bicycles, or children's toys that are designed
> or manufactured solely for outdoor use but
> which have become dilapidated, deteriorated,
> or dismantled.
>     c. Arrington will not park on the outside
> of the Properties any vehicles that are
> inoperable. All operable vehicles will be
> parked on a driveway, carport, street, or
> alleyway in compliance with state and local
> laws.

(Order ¶ 32).

On January 21, 2014, at the request of the City, the Court scheduled a compliance hearing for February 11, 2014. (Arrington Dep. Ex. C). The compliance hearing was held on February 11, 2014, and the court found that Arrington had failed to comply with the Court's December 17, 2013, Order but that Arrington had agreed to remove the items in violation, including a trampoline, wooden indoor furniture and gas grills. (Arrington Dep. Ex. D). The court gave Arrington fourteen days to remove the property as described in the December 17, 2013, Order and stated that if Arrington did not, the City was to file a notice of non-compliance, after which the court would issue an order authorizing the City to enter the properties to remove the items in violation of the Order. (*Id.*).

On February 28, 2014, the City filed a Notice of Non-Compliance supported by an affidavit of Caywood and photographs he directed be taken of the properties on February 27, 2014, showing several items not in compliance including a trampoline, wooden indoor furniture, gas grills, the motorcycle, and a pickup

-14-

truck with a flat tire. (Arrington Dep. Ex. E). In response, on March 3, 2014, the court issued an order authorizing the City to enter upon the properties and remove items that remained in violation of the December 17, 2013, Order. (Arrington Dep. Ex. F).

On March 10, 2014, Caywood, along with other code enforcement officers, came to the properties and removed the items that were in violation of the Court's Order, including the motorcycle, the truck, a trailer, grills, indoor furniture, tires, scrap, building materials, children's toys, etc. that were improperly stored outside. (Caywood Aff. ¶¶ 22, 23). The City took only property that was violative of the December 17, 2013, Order. (*Id.*).

The City contracted with Kelley to tow the truck, trailer and motorcycle and contracted with Lunz to remove the other items in violation of the December 17, 2013, Order. (Caywood Aff. ¶¶ 22, 23, 25; Novell Decl. ¶ 4). Lunz removed only the specific items of property they were told to remove at the direction of the City. (Lunz Aff. ¶¶ 4-5). At all times on March 10, 2014, Lunz acted pursuant to the court order and under the supervision and direction of the City. (*Id.*).

Caywood instructed Kelley's employees to remove the silver truck because it was inoperable and lacked a battery.[1] (Caywood

---

[1] Caywood told Arrington that he was free to place a battery in the truck, start the truck, drive it one foot forward and one foot back to prove it was operable, but Arrington did not do so. (Caywood Aff. ¶ 27). Arrington disputes this, although he produced no evidence to support his assertion. (DE #66 at 2).

Aff. ¶ 23; Pl. Dep. at 35, 41; Novell Decl. ¶ 6). They were also instructed to remove an inoperable motorcycle with missing parts and a back tire that would not turn. (Caywood Aff. ¶ 23; Pl. Dep. 202-03; Novell Decl. ¶ 6). Additionally, Kelley was instructed to remove a homemade trailer that was dilapidated and had a damaged hitch. (Oct. Hr'g 41, Ex. B; Pl. Dep. 188; Caywood Aff. ¶ 23; Novell Decl. ¶¶ 5-6). The truck and the trailer were full of trash and debris, tires, building equipment, and other items in violation of the court Order. (Caywood Aff. ¶ 28). Arrington conceded in his deposition testimony that, to the best of his knowledge, Kelley was acting at the direction of the City and Caywood. (Pl. Dep. at 189-91). Caywood directed that photos be taken of the items removed to demonstrate the condition of the property that was removed. (*Id.* ¶ 22, Ex. 3).

On March 10, 2016, two years later, Arrington filed this lawsuit. According to Arrington's deposition testimony, the sole basis for his allegations of racially based selective enforcement of the ordinance against him is photos he took at various times showing alleged Code violations at several other properties. Arrington asserts that these properties are owned by white people, and the NCE failed to take enforcement action against these properties. (Arrington Dep. at 92). One of the properties identified by Arrington is 3420 S. Lafayette, located adjacent to Arrington's residence and another is 3514 Lafayette, located

adjacent to Arrington's lot (Arrington Dep. at 93). He also
identified 4122 Winter Street (Arrington Dep. at 128-29), and 3711
Barr Street. (Arrington Dep. at 129-32).

Arrington believes 3420 S. Lafayette is owned by a Caucasian
family named Wolf. He admits that NCE enforcement action was taken
against the property in 2010, but he claims the property is still
in violation. (Arrington Dep. at 103-05). Arrington claims the
3514 Lafayette property is owned (or at least occupied) by a
Hispanic woman. (*Id*. at 118-23). He purchased the trailer that
was removed from his property by NCE from her. (*Id*.). Arrington
believes the Winter Street address is owned (or at least occupied)
by a Caucasian, David Diggins. (*Id*. at 128-29). Arrington admits
that some enforcement action has been taken by NCE against this
property, but claims the property remains in violation. (*Id*. at
147-48). Arrington claims the 3711 Bar Street property is also
occupied, if not owned, by Caucasians. His photo shows a red Ford
truck parked in the grass in 2013 in violation of the Code.
(Arrington Dep. at 130-31; Ex. J). Arrington also referenced a
property on Calumet near Pettit that he claims has had an
improperly parked vehicle in the grass for many years. (*Id*. at
136-37).

In response to these allegations, NCE Director Joyner looked
at NCE's records to determine the enforcement actions, if any, that
NCE has taken against these properties. (Joyner Aff. ¶ 12). NCE's

records confirm that enforcement actions have been taken against all but one of the identified properties. (*Id.*). The only exception is 4336 Calumet Street, which does not appear to be a valid address. (*Id.*). According to Joyner, it appears that Calumet begins in the 4500 block. (*Id.*).

Joyner chronicles the enforcement action taken against each of these properties. (*Id.* ¶¶ 13-16). Enforcement at 3420 S. Lafayette began on October 8, 2009, when five vehicles were tagged and the owners were given twenty days to show they were operable. Upon reinspection on October 29, 2009, three of the vehicles were towed, the other two were found to no longer be in violation. Three vehicles were tagged on February 27, 2013, but upon reinspection on March 20, 2013, all three vehicles were gone. In January, 2015, two vehicles were tagged, but upon inspection on February 13, 2015, the vehicles were gone. On March 12, 2015, one vehicle was tagged but on inspection on June 2, 2015, the vehicle was gone. On December 2, 2016, tags were placed on three vehicles and a motorcycle. Upon reinspection on December 21, 2016, the motorcycle and one vehicle were gone. Another vehicle was scheduled for tow but due to weather, the tow had to be extended to January 6, 2017. (Joyner Aff. ¶ 13).

At 3514 S. Lafayette, on August 25, 2009, NCE records show that a notice of violation was sent. NCE records show that the property was brought to code November 3, 2009. On March 18, 2011,

a vehicle was tagged, but on reinspection on March 25, 2011, the vehicle was shown operable. On November 13, 2012, the same vehicle was tagged again, but upon reinspection, the vehicle was gone. On September 26, 2014, a minimum housing case was brought and there were several order to repair hearings after which the owner brought the home to code. (Joyner Aff. ¶ 14).

NCE records show that, in December 2009, the property at 4122 Winter was posted for weeds. In 2015, a courtesy notice of an OTA was served. Upon reinspection, the owner had removed the debris, abating the cited violation. In December, 2015 notice was given of several oversized vehicles on the property but upon reinspection, the vehicles had been removed. (Joyner Aff. ¶ 15).

At 3711 Barr, NCE records show that an OTA was issued on March 25, 2011, and the property was cleaned up by the owner upon reinspection on April 29, 2011. Another OTA was issued on July 2, 2014, but when reinspected, the property had been cleaned up. On the same date the OTA was issued, a 20-day tag was placed on a red Ford pickup. Upon reinspection on July 23, 2014, the vehicle was gone. On October 5, 2015, a minimum housing case was begun and, as of May 31, 2016, the owner had brought the house to code. (Joyner Aff. ¶ 16).

## Arrington's Claims Against the City of Fort Wayne, Mayor Henry, and John Caywood

To prevail on a Section 1983 claim, a plaintiff must show that he was deprived of a right secured by the Constitution or laws of the United States and the deprivation was caused by a person acting under color of state law. *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

### Procedural Due Process Claims

Arrington's *pro se* complaint does not make it clear whether he intended to allege that Defendants violated his Fourteenth Amendment due process rights, but the Defendants have addressed this claim and, for that reason, this Court will too.

> The basic rights guaranteed by constitutional due process are notice of the intended adverse government action and an opportunity to be heard in response, although more elaborate procedural rights - such as the right to present evidence, to confront adverse witnesses, and to be represented by counsel - may apply in cases in which vital private interests are at risk.

*Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017).

To prevail on a due process claim, Arrington must show that he had a protected property interest, was deprived of that interest by an individual acting under color of state law, and was denied due process. *Booker-L v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012). Defendants have pointed to several procedures that are in place to ensure that individuals such as Arrington have notice and

an opportunity to be heard prior to property being taken. In fact, Defendants outline an extensive procedure that took place prior to Arrington's property being seized. The procedures in place to protect Arrington's property rights went well beyond what is mandated by the Due Process Clause. *Id.* ("Governments may, of course, offer procedural protections that exceed the constitutional minimum through statute or administrative rule. Many state and local licensing schemes provide procedural protections that are far more elaborate than due process requires."). In response, Arrington has not pointed to any policy or procedure that he claims violated his due process rights. Because there is no evidence to support a due process claim against the City, it must be dismissed.

The claims against Mayor Henry and Caywood in their official capacities must also fail, because "[a]n official capacity suit is tantamount to a claim against the government entity itself." *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007)(citations omitted); *see McLaughlin v. Freeman,* No. 2:08-CV-58-PRC, 2013 WL 5407041, at *8 (N.D. Ind. Sept. 26, 2013).

As for any individual capacity claims Arrington may be asserting against Mayor Henry or Caywood, those claims fail for the same reasons that the official capacity claims fail: there is simply no evidence that Arrington was denied due process. Additionally, Arrington has pointed to no evidence that Mayor Henry was involved in this matter in any way. Furthermore, Mayor Henry

is not liable merely because he supervises the individuals involved in this incident. *See Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) ("However, § 1983 does not allow actions against individuals merely for their supervisory role of others.").

<u>Equal Protection Claims</u>

Arrington believes that the NCE targeted him for an enforcement action because of his race, in violation of the Fourteenth Amendment's Equal Protection Clause. To succeed on this claim, Arrington must produce some evidence that a "state actor has treated him differently from persons of a different race and that the actor did so purposefully." *Xiong v. Wagner*, 700 F.3d 282, 295 (7th Cir. 2012)(quoting *Billings v. Madison Metro. Sch. Dist.*, 259 F.3d 807, 812 (7th Cir. 2001)); *see also Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015)("To establish liability for an equal protection violation, a plaintiff must establish that the defendant acted with a discriminatory purpose and discriminated against him because of his membership in an identifiable group.").

Arrington pointed to several properties owned or occupied by Caucasians that Arrington alleges also had code violations. He alleged that no action was taken against these individuals because of their race. Defendants, however, have produced evidence that enforcement action was taken at all of the properties that Arrington points to except one. That address was invalid. Furthermore, the City and Caywood have produced evidence that race

is not a factor in their enforcement decisions, and it played no role in their decision to take action against Arrington. Arrington offers no evidence in response. Accordingly, his equal protection claims against the City, Mayor Henry, and Caywood must be dismissed.

Arrington's Claims against Lunz and Kelley

Arrington's claims against both Lunz and Kelley also fail. Lunz has produced evidence that its employees entered the property on March 10, 2014, and removed only the specific items of property they were told to remove at the direction of the City. (Lunz Aff., ¶¶ 4-5). At all times on March 10, 2014, Lunz acted pursuant to the court order and under the supervision and direction of the City. (*Id.*). Arrington has produced no evidence disputing these facts.

Kelley has produced evidence that, in removing Arrington's vehicles, it acted at the City's direction. In fact, Arrington conceded this at his deposition, and he has produced no evidence suggesting otherwise in response to Kelley's summary judgment motion. (Pl. Dep. at 189-91).

Additionally, Arrington has not established that either Lunz or Kelley were acting under color of state law. *Reynolds*, 488 F.3d at 764. This would require a showing that Lunz or Kelley conspired with a state actor to deprive him of his rights. *See Brokaw v.*

*Mercer Cnty.*, 235 F.3d 1000, 1016 (7th Cir. 2000)("While a private citizen cannot ordinarily be held liable under Section 1983 because the statute requires action under color of state law, if a private citizen conspires with a state actor, then the private citizen is subject to Section 1983 liability."). Arrington has produced no evidence that either Lunz or Kelley conspired with the City to deprive him of his constitutional rights.


Collateral Estoppel and *res judicata*

Each Defendant has argued that Arrington's claims are barred by collateral estoppel and res judicata.[2] The briefing of these issues is rather conclusory. Because collateral estoppel and *res judicata* are not jurisdictional in nature, the Court need not address them here. *See Rekhi v. Wildwood Indus.*, 61 F.3d 1313, 1317 (7th Cir. 1995)("Collateral estoppel is a defense, and not a jurisdictional one..."). Each of Arrington's federal claims fail on the merits, and collateral estoppel and *res judicata* need not be addressed.

---

[2] It is unclear whether the City of Fort Wayne, Mayor Henry, and Caywood are arguing that all claims are barred by collateral estoppel and *res judicata* or just the theft claim. Their arguments are directed only at the theft claim, but they appear to be asserting collateral estoppel and *res judicata* as to all of Arrington's claims.

<u>Theft in Violation of I.C. § 35-43-4-2(a)</u>

Arrington has alleged that each Defendant committed theft in violation of Indiana Code § 35-43-4-2(a) when they removed the items from his property. Because the federal claims are being dismissed, the court will remand this case to state court for further proceedings. *See Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 513 (7th Cir. 2010) ("Ordinarily, when a district court dismisses the federal claims conferring original jurisdiction prior to trial, it relinquishes supplemental jurisdiction over any state-law claims under 28 U.S.C. § 1367(c).").[3]

<u>CONCLUSION</u>

For the reasons set forth above, Defendant Lunz Excavating, Inc.'s Motion for Summary Judgment (DE #50), Defendant Kelley Towing's Motion for Summary Judgment (DE #52), and Defendants, City of Fort Wayne and John Caywood's Motion for Summary Judgment (DE #56) are **GRANTED.** Arrington's federal claims are **DISMISSED WITH PREJUDICE**, and this case is **REMANDED** to Allen Superior Court for further proceedings.

DATED: **September 27, 2017**          **/s/ RUDY LOZANO, Judge**
                                       **United States District Court**

---

[3] This Court has an additional jurisdictional concern with regard to Arrington's theft claim, making remand particularly appropriate here. This Court is concerned that the theft claim may be barred by the *Rooker-Feldman* doctrine. Unfortunately, none of the Defendants raised this issue. *Rooker-Feldman* generally bars a district court from exercising jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of that judgment." *Exxon Mobil v. Saudi Basic Indus.*, 544 U.S. 280, 284 (2005); *see also Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir. 1995).